McGOVERN, Respondent, vs. ANN ARBOR RAILROAD COMPANY, Appellant.

*April 25—May 15, 1917.*

*Carriers: Shipment at "owner's risk:" Freezing of apples in transit: Liability of carrier: Negligence: Evidence.*

1. By accepting a bill of lading including the words "owner's risk," or letters understood by the parties to be their equivalent, a shipper relieves the carrier from its responsibility as an insurer and limits the same to responsibility for negligence.
2. A carload of apples was shipped from Michigan across Lake Michigan to Wisconsin late in December. By its published tariff (which was part of the contract) the carrier offered the shipper the opportunity of putting a stove in the car with a man in charge of it, but did not offer to warm or house the car itself. The shipper did not accept such offer, but, by accepting the bill of lading with the letters O. R. (owner's risk), chose to assume the risks incident to an ordinary and expeditious transit of the car. The car went through on schedule time, but on its arrival in Wisconsin the apples were found to be frozen. There was no evidence of a custom on the part of railroad companies to "round-house" such shipments *en route.* *Held,* that no negligence of the carrier was shown.

APPEAL from a judgment of the circuit court for Waukesha county: MARTIN L. LUECK, Circuit Judge. *Reversed.*

A carload of apples was shipped over the defendant's railway and carferry line by one Wayne Mick at Beulah, Michi-

gan, to the plaintiff at Waukesha, Wisconsin, December 22, 1914, and were badly frozen in transit, and this action is brought to recover damages therefor. It was tried by the court without a jury. The defendant is a foreign corporation operating a railroad in Michigan terminating at Frankfort, and a carferry from Frankfort to Manitowoc, Wisconsin, which transports the cars to the terminal and yards of the company at that place.

The defendant furnished the car and received the same loaded with apples by Mick at Beulah at 4:30 p. m. December 22, 1914, and issued a bill of lading therefor to the plaintiff at Waukesha as consignee, the connecting carrier from Manitowoc to Waukesha being designated as the Chicago & Northwestern Railway. The thermometer at that time stood at about twenty degrees above zero. Mick had kept a heater in the car while it was being loaded, but when the car was accepted for shipment the heater was removed by direction of the defendant's agent. The car left Beulah by the first train after the loading was completed and arrived at Frankfort on Lake Michigan at 7:50 p. m. of the 22d. It stood on the sidetrack at Frankfort until 9:20 a. m. on the following morning, when it was placed on the first carferry sailing after the arrival of the car in Frankfort. It arrived at Manitowoc at 4:10 p. m. of the same day, and was delivered to the Chicago & Northwestern Railway Company at 4:40 p. m., inspected by the latter company, and the apples found to be frozen. It arrived in Waukesha on the 26th of the same month. The maximum temperature at Manitowoc on the 23d of December was seven degrees above zero and the minimum five degrees below zero. The bill of lading contained the notation on the face, "O. R.—Charges guaranteed." The published tariffs of the defendant company made no provision for the heating of cars used for the transportation of vegetables or fruits, but provided that in case stoves and fuel were provided by the consignor one or more men must accompany them to care for the fire, one of whom would be carried

free.   The tariff contained further provisions as to the manner in which stoves furnished by consignors should be put up and fastened and the kind of fuel to be used.   The trial judge found that the apples were received in good condition; that by reason of defendant's negligence in failing to protect them from frost they were frozen while in defendant's custody, and rendered judgment for the plaintiff for the value of the apples so frozen and the freight charges, and the defendant appeals.

*M. A. Jacobson* of Waukesha, for the appellant.

For the respondent there was a brief by *Tullar & Tullar* of Waukesha, and oral argument by *D. S. Tullar* and *M. S. Tullar*.

WINSLOW, C. J.   There was ample proof that the apples were in good condition when received by the company, and the only serious question on this appeal is whether there is any sufficient proof of negligence on the part of the railway company.

It appears without dispute that the letters "O. R." (meaning "owner's risk") were on the face of the bill of lading when the consignor (who was also the owner) received it. The consignor testified that at the time he signed the bill of lading it contained the indorsement "Owner's risk—Charges guaranteed," that he understood the situation and the weather conditions at the time, that the matter of weather was then talked over with reference to the apples freezing in the car, and that the bill of lading was made out with reference to the conditions then existing.   He makes no claim that he did not fully understand that the letters "O. R." meant "owner's risk," nor does he claim that he was ignorant of the fact that in the regular course of the defendant's business considerable time must necessarily elapse after the car arrived in Frankfort before it was taken upon the carferry.

By the acceptance of the bill of lading including the words "Owner's risk," or the letters understood by the parties to be

their equivalent, the consignor relieved the carrier from its responsibility as an insurer and limited the same to responsibility for negligence. *Abrams v. M., L. S. & W. R. Co.* 87 Wis. 485, 58 N. W. 780; 4 Elliott, Railroads, sec. 1425. Was negligence shown? We are unable to reach that conclusion. The shipping contract was made in the dead of winter, when both parties knew that zero weather was liable to come at any time, and the weather conditions were fully understood and discussed. The company by its published tariff (which was part of the contract) offered the shipper of such property the opportunity of putting a stove in the car with a man in charge of it under certain conditions, but did not offer to warm or house the car itself. The shipper did not choose to put a stove in the car under the conditions offered, but decided (by accepting the bill of lading) to assume the risks incident to an ordinary and expeditious transit of the car to its destination, one of the most obvious of which was the risk of freezing. The car went through expeditiously and on schedule time. The damage resulted not from delay nor from any act or omission of the defendant, but from the operation of a cause beyond the control of either party. In the published tariff of the defendant there is no provision for the furnishing of heat in the transportation of vegetables or fruits; the rule hereinbefore referred to authorizing the shipper to furnish a man and stove is the only provision on the subject contained in the tariff. This tariff having been approved by the interstate commerce commission is absolutely controlling, and the railroad company is not permitted to give greater or less service than it provides. There is no evidence of any custom on the part of railway companies to "roundhouse" such shipments *en route* as was the case in *Victor P. Co. v. C. & N. W. R. Co.* (Minn.) 160 N. W. 201. We fail, therefore, to find any evidence on which the conclusion of negligence can be based.

*By the Court.*—Judgment reversed, and action remanded with directions to dismiss the complaint.