DOLAN FRUIT COMPANY, APPELLEE, V. JAMES C. DAVIS,
DIRECTOR GENERAL, APPELLANT.

FILED DECEMBER 7, 1923.    No. 22604.

1.  Carriers: NEGLIGENCE. In an interstate shipment of fruit, the
    refusal of the carrier to perform special services en route, not
    offered to shippers generally by its published tariffs, will not
    support a charge of negligence, unless, perhaps, in case of great
    emergency, which is not shown in this case.

2.  Trial: INSTRUCTIONS: CONTRIBUTORY NEGLIGENCE. When an
    allegation of contributory negligence is supported by any com-
    petent testimony, or the evidence warrants an inference thereof,
    it is error for the court to refuse to instruct the jury upon the
    law relating thereto.

3.  Carriers: NEGLIGENCE: ACT OF GOD. Under the federal de-
    cisions, where property is destroyed by an act of God, but would
    not have been within the range of the destructive force except for
    the negligent delay of the carrier, the act of God, rather than the
    negligent delay, is the proximate cause.

APPEAL from the district court for Hall county: BAYARD
H. PAINE, JUDGE. *Reversed.*

*Byron Clark, Jesse L. Root* and *J. W. Weingarten,* for ap-
pellant.

*James H. Woolley, W. J. Wilkinson* and *Stough & Dunn,
contra.*

Heard before MORRISSEY, C. J., ROSE and GOOD, JJ., RED-
ICK, District Judge.

REDICK, District Judge.

The action is to recover $337.74 damages to a carload of
bananas, alleged to have been caused by negligence of the
defendant. The shipment was from Kansas City, Missouri,
to Grand Island, Nebraska, and the car in question left
Kansas City at 11 a. m. December 6, 1919, arrived at Lin-
coln 4 p. m. December 7, left Lincoln at about midnight,
and arrived at Aurora 10 a. m. December 8. The bananas
were in good condition at Kansas City and upon their ar-

rival at Aurora. During transportation between Lincoln and Aurora a severe snow storm commenced and it was very cold, from 3 to 7 degrees below zero, and conditions were such that the greater part of the train was abandoned at Bradshaw, about 18 miles east of Aurora, but a few cars, including the car of bananas, went forward, arriving at Aurora, as above stated. In the meantime the storm increased, and in the judgment of defendant's agents it was unsafe to continue shipment of freight from Aurora to Grand Island, about 22 miles, and the car of bananas was side-tracked at Aurora and remained there until early the morning of December 10, when it was placed on the first freight train going west after the storm. It arrived at Grand Island about noon of the 10th, and the bananas were found to be damaged so that their market value was depreciated in the sum sued for. Plaintiff claims that bananas must have air, and that it was necessary to ventilate the car; that this could not be done while the car was out in the yards, because to allow the cold air to strike the bananas would turn them black and destroy their market value, and that, therefore, it was necessary to put the car in some sheltered place where the doors might be opened and the car ventilated gradually without injury to the fruit. It was a refrigerator car provided with a heater in one end, and accompanied by a caretaker for plaintiff during the entire shipment. It is claimed that the caretaker requested the defendant to house the car in the roundhouse so that it might be properly ventilated, but that defendant refused. It is further claimed that the caretaker requested defendant to put the car of bananas on a passenger train which left Aurora at 4.18 p. m. December 8, two hours late, which defendant refused. It stopped snowing, but the wind blew very hard about midnight of the 8th, the snow drifted badly, and a snow plow was started from Aurora at 7:45 a. m. of the 9th, arriving at Ravenna, beyond Grand Island, at 9.45 a. m. The tracks in the yards at Aurora were clogged with snow so that the cars had to be dug out with shovel.

The answer denied all negligence, alleged that the delay

.at Aurora was caused by the act of God, that the injury to the bananas was due to their inherent qualities and to negligence of the caretaker of plaintiff in properly protecting them. Defendant further claims that roundhousing the car or sending it forward on a passenger train was not permitted under its published tariffs, and would constitute a discrimination in favor of the plaintiff, inasmuch as such special protection was not offered to shippers generally by its published tariffs. The allegations of the answer were put in issue by the reply. Trial to a jury resulted in a verdict and judgment for the plaintiff for the amount claimed, and, motion for new trial having been overruled, defendant appeals.

Plaintiff claims defendant was negligent (1) in not putting the car in the roundhouse as requested; (2) in not continuing the freight train from Aurora to Grand Island on its regular schedule; (3) in not attaching the car of bananas to the passenger train; and (4) in delaying the shipment eight hours at Lincoln, but for which delay the car would have arrived in Grand Island before the storm.

With reference to the charge of negligent delay at Lincoln, it is sufficient to say that the established rule of the federal court is to the effect that, where there has been a negligent delay in transportation but for which the subsequent act of God would not have operated to the injury of the shipment, nevertheless the act of God, and not the negligent delay, must be considered the proximate cause of the loss. *Northwestern Consolidated Milling Co. v. Chicago, B. & Q. R. Co.*, 135 Minn. 363, and cases cited. Furthermore, it appears that the delay in Lincoln itself caused no injury, as the bananas were found in good condition upon arrival at Aurora. The lower court properly withdrew this charge of negligence from the consideration of the jury.

The charges of negligence for failure to roundhouse and refusal to forward on a passenger train may be considered together. In this connection defendant claims, and the evidence shows, that its published tariffs did not offer to the shipper any such special protection as was here demanded,

Dolan Fruit Co. v. Davis.

and that defendant furnished a heater to be operated and controlled by the plaintiff's caretaker who had complete control of the shipment and whose duty it was to properly protect it from the cold.    This being an interstate shipment, it is governed by the federal laws and decisions.   The interstate commerce law, subdivision 1, sec. 8569, 8 U. S. Comp. St. (1916), provides that the carrier shall file with the commission schedules showing all rates of transportation, "and shall also state separately all terminal charges, storage charges, icing charges, and all other charges which the commission may require, all privileges or facilities granted or allowed and any rules or regulations which in any wise change, affect, or determine any part or the aggregate of such aforesaid rates, fares, and charges, or the value of the service rendered to the passenger, shipper or consignee."    And under subdivision 7 of the same section it is provided:

"No carrier * * * shall engage or participate in the transportation of passengers or property, * * * unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this act; * * * nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

It seems to be well established that under these provisions of the statute the carrier is prohibited from extending to a shipper any special advantages or facilities not provided for in the tariffs so filed with the commission and that any contract to that end is void.   *Chicago & A. R. Co. v. Kirby,* 225 U. S. 155; *Bradford v. Hines,* 206 Mo. App. 582. These two cases were actions upon contracts claimed to have been made by the carrier for services and facilities in the transportation of freight which were not provided for in the published tariffs, neither one presenting any claim of negligence.   In *McGovern v. Ann Arbor R. Co.,* 165 Wis. 525, it was held:

"Where a railroad company by its published tariffs, ap-

proved by the interstate commerce commission, offered the shipper of apples the opportunity to put a stove in the car, with a man in charge of it under certain conditions, but did not offer to warm or house the car itself, and a shipping contract covering a car of apples was made in the dead of winter, when both parties knew that zero weather was liable to come at any time, and the weather conditions were fully understood, and the shipper accepted a bill of lading including the words 'owner's risk,' so that the liability of the railroad was limited to liability for negligence, and the car went through expeditiously and on schedule time, but reached destination with the apples frozen, the railroad was not liable to the consignee." (162 N. W. 668.) And the court said: "In the published tariff of the defendant there is no provision for the furnishing of heat in the transportation of vegetables or fruit; the rule hereinbefore referred to authorizing the shipper to furnish a man and stove is the only provision on the subject contained in the tariff. This tariff having been approved by the interstate commerce commission is absolutely controlling, and the railroad company is not permitted to give greater or less service than it provides."

It appears, therefore, that no legal duty rested upon the carrier to protect the shipment by putting the car in the roundhouse, nor to expedite the shipment by attaching the car to a passenger train, as these services were not provided for in the published tariffs, and if they had been contracted for with the present shipper the contract would have been void. So the question is whether the defendant can be charged with negligence for failing to do that which the law prohibited it from contracting to do. We think the answer must be in the negative. A disregard of a positive statute is generally held to afford an inference of negligence, and we are unable to perceive how a refusal to disregard it should give rise to a like inference. No doubt in case of great emergency one may be called upon to act in a manner not enjoined upon him by law or even in face of a legal prohibition, or be subject to a charge of failing

Dolan Fruit Co. v. Davis.

to use ordinary care, but the facts of the present case do not in our judgment present such an emergency. The evidence discloses that at the time in question there was no space in the roundhouse where the car in question might have been placed without the removal of one of defendant's engines and subjecting it to injury. And regarding the attachment of the car to a passenger train, the evidence is conclusive that such action was entirely impracticable, especially in view of the extreme cold weather. It could not be placed between the engine and passenger cars, because there was no way of conducting the heat through or around this freight car; and it could not be placed upon the rear of the train, because that would have required a brakeman to ride upon the car, which was out of the question under the weather conditions. We think the determination of these two questions very largely depended upon the judgment of the railroad agents, and their conclusions under the conditions shown presented no question of negligence for the jury.

Defendant asked the following instruction: "You are instructed that the defendant was not required to take any extraordinary measures or steps to forward the plaintiff's shipment from Aurora, and if you find by a preponderance of the evidence that the defendant exercised that degree of care that an ordinary, prudent, and careful man would have exercised under the same circumstances and conditions (excluding from your consideration, as provided in these instructions, the claim that the shipment should have been placed in a roundhouse, or carried on a passenger train, and also excluding from your consideration any delay to said shipment prior to arrival at Aurora), then you are instructed that your verdict should be for the defendant."

According to the view we have expressed on the questions covered by this instruction, we think the court below erred in refusing to give it or one of similar import.

One of the defenses set up in the answer was that the loss on the shipment was due to the inherent qualities of the bananas and to the negligence of plaintiff's caretaker

in failing to properly protect them, but the instructions of the lower court did not state to the jury the law applicable to such defense. The defendant requested the court to instruct the jury that, if they found from a preponderance of the evidence any of the loss or damage to the bananas was caused or contributed to by any act or failure to act on the part of the caretaker in the care and protection of said shipment, they should find for the defendant. Of course, the defendant would not be responsible for any loss due to the negligence of the plantiff's caretaker *(Western Mattress Co. v. Ostergaard,* 71 Neb. 575), and the question of contributory negligence having been presented by the pleadings, and evidence having been received as to the care taken by the caretaker, the jury should have been instructed as to the effect of contributory negligence, if the same were shown.

Upon a careful review of the pleadings and evidence, we are convinced that the case should have been submitted to the jury upon the one charge of negligence in forwarding the car from Aurora to Grand Island, and the defenses of contributory negligence and act of God, and that for the errors in submitting the other questions of negligence, the refusal to instruct the jury upon contributory negligence, and the refusal of the instruction above quoted, the judgment must be reversed.

REVERSED AND REMANDED.