## Haldeman, Appellant, *v.* Hillegass, Chairman, et al.

376

Argued April 10, 1939. Before KEPHART, C. J., SCHAF-FER, MAXEY, DREW, LINN and STERN, JJ.

*Aaron S. Swartz, Jr.*, with him *John H. Fertig, Victor J. Roberts* and *High, Dettra & Swartz*, for appellant.

*Harry M. Sablosky*, with him *Maxwell Strawbridge*, County Solicitor, and *E. Arnold Forrest*, Assistant County Solicitor, for appellees.

PER CURIAM, June 19, 1939:

Montgomery County, on December 10, 1937, established a retirement system for county employes and officers, to commence January 1, 1938.[1]  Appellant, the

---

[1] Pursuant to the Act of June 4, 1937, P. L. 1625, for counties of the third class.

duly elected prothonotary, who had served in that capacity from January 3, 1922, to January 3, 1938, immediately notified the county retirement board of his intention to become a member of the system. On December 31, 1937, he received his last salary payment, and on January 1st he mailed a personal check, as his payroll contribution, to the secretary of the retirement board. It was returned uncancelled, and the board declined his application for membership. On July 11, after a number of demands, he filed a written application to be retired under the Act, as of January 3, 1938, at which date he was more than sixty years of age.

The board refused his request, whereupon mandamus proceedings were instituted to compel recognition of appellant as a beneficiary-member of the retirement system. Appellees, in their return, disclaimed responsibility, on the ground that appellant was neither a "member" nor a "contributor." The court below held that, while he was a "member" and entitled to recognition as such, he had never become a "contributor," within the meaning of the Act, and was not entitled to a retirement allowance. This result was based wholly upon the conclusion that he received no salary for 1938, after the retirement system went into effect. On appeal to this Court, appellant asserts that, notwithstanding the final payment of his salary on December 31, 1937, he earned the salary attached to his office for the first three days of 1938, and the refusal of the mandamus was therefore erroneous. To sustain the action of the court below, appellees protest that appellant could not become a "contributor" because his name was not on the county payroll for 1938, and also that his notice of retirement was communicated after his last term had expired.

Under Section 8 of the Retirement Act, county employes must, and county officers may, become members of the retirement system. Any persons within the designated class who become members prior to January 1st of the year the system is established are known as

"Original Members," with the right to consideration for prior service, acknowledged by a certificate issued by the board.[2] Appellant qualified as a member by notifying the board prior to January 1st of his intention to become such; he was entitled to a certificate of original membership, and the benefits that accompany original membership if he was also a contributor.

The Act does not provide for retirement pay to those who are merely members of the system. Under Sections 11, 13 and 14, such pay belongs only to those members who are "contributors". See *McBride v. Allegheny County Retirement Board et al.*, 330 Pa. 402, 405. Section 1 of the Act defines a "contributor" as "any person who has accumulated deductions in the fund created by this act standing to the credit of the members' annuity reserve account." "Accumulated deductions" are defined as "the total of the amounts deducted from the salary of a contributor and paid into the fund created by this act and standing to the credit of the members' annuity reserve account, together with regular interest thereon." In other words, to warrant retirement pay, a portion of the member's salary must be contributed to the members' annuity reserve account. The trial court properly decided that appellant could recover only if he became a contributor in 1938, out of salary earned after the retirement system became effective.

However, the court below did not give full recognition to appellant's standing under the Act and laid down too strict a rule of interpretation to govern this and similar cases. It was a mistake to conclude that since his name did not appear on the county payroll after December 31, 1937, he earned no salary in 1938 from which a percentage could be contributed. Under Article XIV, Sections 1 and 2, of the Constitution, and Sections 51[3] and 220 of the General County Law of May

---

[2] Section 10.

[3] As amended June 9, 1931, P. L. 401, section 1.

2, 1929, P. L. 1278, appellant's term did not expire until the 3rd of January, the first Monday, *and he was entitled to salary to that date*. While it is true appellant's last salary check in 1937 included remuneration for the first three days of 1938, that part of the pay was money earned during 1938; its payment on December 31st was merely an anticipated payment by the county for the three days of 1938 during which appellant's services were available and he was subject to all the liabilities of his office. It appears that the practice of the county was to meet its payrolls on the 15th and last day of each month. The first payroll in 1938 was that of January 15th.

Appellees argue that, although appellant may have earned salary in 1938, he did not appear on any payroll after the adoption of the system, and consequently no "accumulated deductions" could be made therefrom to his credit, so as to constitute him a "contributor" within the statutory definition. Because of the delay attending the initiation of the system, no payroll deductions were made on January 15th, the first deductions being taken on the 31st; in such circumstances, appellees admit that a member whose name appeared on the first January payroll might remit a part of his salary by check or otherwise. This is an admission that the provision of Section 5 for payroll deductions[4] is merely directory. To accomplish the beneficial purposes of the Act a liberal construction should be given to its provisions, so that those desiring to become contributing members shall not be deprived of an opportunity because of delay in setting up the system. Retirement systems must necessarily have a definite beginning, and take effect at a particular time, as to the particular employes and

---

[4] "Each member of the retirement system shall be required to contribute to the fund such per centum of his salary, as shall be computed by the actuary . . ., which contributions shall be paid into the fund through payroll deductions in such manner as the board may require."

officers affected. This was clearly stated in *Retirement Board v. McGovern et al.,* 316 Pa. 161, at page 172, and *McBride v. Allegheny County Retirement Board et al.,* 330 Pa. 402, at page 405 (note). The date a third-class county retirement system goes into effect is established beyond dispute by the express provisions of Section 2 of the Act of 1937. The persons who may become members, contributors and beneficiaries of the system are likewise set forth in other sections. Retirement officials should be warned that the courts will not tolerate undue delay in the initiation of the system after its adoption by a county, and will compel prompt action by mandamus, although there was no occasion for such proceedings in this particular county. However, the effective date of the Act cannot be postponed by their delay. They could have accepted checks and other remittances from members or deducted the sums due January 15th from the pay of January 31st; as to appellant, the deduction might have been made from his pay on December 31st.

The intention of the Act is solely to require each member, before becoming a beneficiary under the Act, to earn salary *while the Act is in effect* and contribute a *portion* thereof to the fund. The provisions for payroll deductions are intended to facilitate these contributions, but it cannot be urged that they are mandatory. Obviously, when a member becomes liable to payroll deductions after the establishment of the system, and such deductions are for some reason not made by the fiscal authorities, a payment from the personal funds of a member, as a portion of his salary, is equivalent to a salary deduction. The same is true where payment is made in anticipation of a prospective deduction, but anticipatory payments may be subject to reasonable regulations and should not extend beyond the next salary payment.

The mere fact that appellant's name last appeared on the county payroll in December, 1937, does not de-

prive him of his rights. Appellees overlook the Act of March 31, 1876, P. L. 13, Section 5, as amended April 18, 1923, P. L. 76, Section 1, which provides: "All county officers within the counties, to which this act applies, whether elected by the people or appointed according to law, . . . shall be paid for their service by fixed and specific salaries . . ., and said salaries shall be paid semimonthly, *on the first and fifteenth days of the month succeeding that in which his services were rendered. . . ."* [5]

By virtue of this statutory provision, appellant was entitled to appear upon payrolls on the 1st and 15th of January. While, after the December 31st payment, as has been stated, he could not claim any additional salary payments, it is clear not only that he was paid then for services during the first three days of 1938, but also that the statute gave him the right to appear upon the payroll after the effective date of the system; therefore, since no payroll deductions were made on his behalf, his tender of payment should have been received and treated by the board as his "deduction", and under it he should have been recognized as a contributor entitled to retirement pay. [6]

We are not impressed by the possibility that there may be an overlapping of payments of salary to officers beginning and ending their terms of office. Appellant went into office on the first Monday of January, sixteen years previously, in line with the usual constitutional procedure that court officers elected by the people assume office on the first Monday of January succeeding the year in which elected. The predecessor

---

[5] This statute was passed in pursuance of Section 5 of Article XIV of the Constitution: "The compensation of county officers shall be regulated by law. . . ."

[6] One payment is sufficient to constitute a contribution to the fund on which, with past services, a retirement allowance may be based. It is not a pension. See *Retirement Board v. McGovern et al.,* 316 Pa. 161, 168, 169; *McBride v. Allegheny County Retirement Board et al.,* 330 Pa. 402, 404, and 405 (note).

holds office until the newly-elected officer is sworn in and assumes his duties. This is usually at high noon Monday. Until that time the incumbent may lawfully perform the duties of the office. Here the term expired January 3, 1938. The number of days before the first Monday is not material, nor is it material that some may have been holidays. No juggling of payments to meet the convenience of the fiscal authorities can deprive a member of his rights under the retirement system.

Under the statute, the county retirement officials, with the aid of the actuary, fix the amount which must be periodically contributed by each member. No such amount was fixed for appellant, but it has not been objected that his tender of a contribution from his salary was inadequate to cover the period between the statutory inception of the system on January 1st and the statutory date for his last payment. From the time the system becomes effective, and so long as the member's salary continues to accrue, his liability to contribute a portion of that salary continues. Although the county officers are to determine both the amount and the date for the deductions under the Act, a member whose liability has begun with the inception of the system becomes a contributor if he in fact makes an adequate contribution, where none has been computed, and even if on the date fixed by the county for payment his services have been severed by operation of law.

What might happen between January 1st and 15th cannot be considered in determining the effect of the retirement law to work out an equitable adjustment of compensation for long public service. As was stated in *McBride v. Allegheny County Retirement Board et al.*, 330 Pa. 402, at page 405: "Among the conditions of the several retirement systems upon which retirement pay may be based are contributions by the employee of a portion of his salary to the retirement fund as required in the act by which he is governed from the time

he enters or joins the retirement system, whether then entitled to retire or not; service in the particular unit of government for the required span of years, here twenty; finally he must reach superannuation age, here 50, if he was under that age when he joined the retirement system. An employee fulfilling these conditions then has a vested interest in retirement pay which cannot be destroyed, weakened or departed from by subsequent legislation. *Neither dismissal from service or office, nor any involuntary removal can affect this vested right to retirement pay.*" See also *Retirement Board v. McGovern et al.,* 316 Pa. 161, 169; *Teachers' Tenure Act Cases,* 329 Pa. 213, 227 (note). The right to retirement pay having become an indestructible contractual right upon payment of contribution and attainment of retirement age, in this case sixty, it does not matter that appellant's term expired or that he may have elected to retire from service, before the fifteenth of January. Appellees urge that a county employe discharged for embezzlement some time between the 1st and 15th of January would not be entitled to retirement pay. This is not necessarily so. His crime would not work a forfeiture, if he was otherwise eligible to receive retirement pay; his contractual rights would not be destroyed.

But appellees maintain that, under Section 11 of the Act,[7] appellant should have filed his written application for a retirement allowance prior to the expiration of his term on January 3rd. As the objection was not made in the return, or before the court below, it may not now be insisted upon. See *Borough of Easton v. Lehigh Water Co.,* 97 Pa. 554, 560. The object of this provision is to enable the system to maintain its actuarial efficiency. Moreover, appellees were certainly not

[7] "Any contributor who has reached superannuation retirement age may retire for superannuation by filing with the board a written statement duly signed by the contributor setting forth at what time he desires to be retired. Said application shall retire said contributor at the time so specified."

entitled to notice prior to January 3rd, in view of their rejection of appellant as a contributor or beneficiary-member by refusing the offer of his contribution. Notice of retirement would have been futile in light of the position the board took upon appellant's membership in the system.

Appellees' real objection to paying appellant adjusted compensation, or retirement pay, lies in the fact that by a single payment to the annuity reserve account, and his employment for such a short time after the effective date of the Act, he becomes a beneficiary-member. We endeavored in *Retirement Board v. McGovern et al.*, 316 Pa. 161, and *McBride v. Allegheny County Retirement Board et al.*, 330 Pa. 402, to answer this objection and demonstrate the reason why one contribution payment is sufficient to entitle a member to retirement pay. This is in effect an acknowledgment by the legislature of prior service, and a recognition by it that long and faithful public employment should be compensated, emphasizing the purpose and scope of the provisions for retirement pay or delayed compensation. There are of course, some public officers, members of retirement systems, to whom appellees' "single payment" objection could not possibly apply, for example, those to whom retirement pay was guaranteed upon their election to office as part of their compensation. Though such pay assumed a different form under different acts, the General Assembly could not by legislation destroy the right thereto. When these officers later joined the present retirement systems they were entitled to the benefit in these systems of the reserve that had been potentially built up for them by the State. This was explained in the McGovern case, at page 171, resolving all doubts that may have existed respecting such contributions. The various retirement acts adopted in this Commonwealth, including the present act, have as their purpose, not the bestowal of a gratuity upon governmental officeholders, but compensation for ex-

tended and faithful services performed, and to be performed, on behalf of the governmental body and the public. As was said in *Busser et al. v. Snyder et al.,* 282 Pa. 440, at page 454: "With relation to the retirement acts, to which appellant calls attention, the basis on which these acts are founded is neither charitable nor benevolent; they are founded on faithful, valuable services actually rendered to the Commonwealth over a long period of years, under a system of classification which the legislature has considered reasonable. These appropriations are for delayed compensation for these years of continued service actually given in the performance of public duties in their respective capacities, with the quality of right and obligation in its concept. It is compensation for the hazard of long continued public employment." See also *Retirement Board v. McGovern et al.,* 316 Pa. 161, 168-169; *McBride v. Allegheny County Retirement Board et al.,* 330 Pa. 402, 409.

To summarize, appellant clearly fulfills all of the requirements that have been invoked. His right to recovery is unaffected by the non-existence of a retirement system for the many years of his service prior to 1938, by the fact he made only one payment as a contributor, or, in these circumstances, by his failure to give notice of voluntarily retiring from office before the expiration of his term. See *Retirement Board v. McGovern et al.,* 316 Pa. 161, 168, 172; *McBride v. Allegheny County Retirement Board et al.,* 330 Pa. 402, 405 (note). His status as an original member gave him the right to recognition of his prior service. His payment gave him a vested right to retirement pay which, because of the fact he had reached the superannuation retirement age of sixty, ripened into a full contractual obligation. See *Retirement Board v. McGovern et al.,* 316 Pa. 161, 169; *Teachers' Tenure Act Cases,* 329 Pa. 213, 227 (note); *McBride v. Allegheny County Retirement Board et al.,* 330 Pa. 402, 405. As was pointed out in the McBride case, at page 405 (note), such an

employe or officer could, upon making a single payment, apply for retirement. To deprive appellant of this right would be an injustice, and would disregard his long labors in the public behalf. Appellant's case is within the requirements of the Act and the just purview of its operation. Although there may be borderline cases in the applicability of the retirement acts, and such cases may cause difficulty in administration, the acts are not to be so construed as to needlessly deprive public employes of their beneficent provisions. There are already too many influences deterring capable and honest individuals from entering upon public service.

Judgment reversed and mandamus directed to issue.