GORDON F. GOSSMAN, APPELLANT, V. STATE EMPLOYEES
RETIREMENT SYSTEM OF THE STATE OF NEBRASKA ET AL.,
APPELLEES.
129 N. W. 2d 97

Filed June 12, 1964.   No. 35785.

Wilson, Barlow & Neff, for appellant.

Clarence A. H. Meyer, Attorney General, and Richard H. Williams, for appellees.

Crosby, Pansing, Guenzel & Binning, for amicus curiae.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

WHITE, C. J.

This is an action by the plaintiff, Gordon F. Gossman, a resident taxpayer and an employee of the State of Nebraska, against the State Employees Retirement System and against other necessary parties not needed to be designated here, which action seeks the declaration of the unconstitutionality of the State Employees Retirement Act, being L. B. 512 of the 1963 session of the Nebraska Legislature, sections 84-1301 to 84-1331, R. S. Supp., 1963, hereinafter referred to as the "Act." The district court for Lancaster County found the Act valid and constitutional and dismissed the petition.

In order to understand the issues, we briefly review the Act. The Act generally provides for the State Employees Retirement System to be administered by a State Employees Retirement Board. The retirement

System, as defined in the Act, includes all State of Nebraska employees with the exception of certain classes of employees who have been previously covered by other retirement plans. The Act became effective on January 1, 1964, which is stated as its operational date. Under the Act, the membership of the Retirement System will be composed of all employees who are employed on that date and are not covered by other retirement plans, and who have been employees of the State for a period of 36 continuous months at any time and who have attained the age of 30, or who have been employed for a period of 24 continuous months and have attained the age of 40. Part-time employees are excluded. The Act provides, as to each employee who is a member of the Retirement System, that 3 percent of his monthly salary be deducted until such time as he has paid a total of $144 during any calendar year, at which time there shall be deducted a sum equal to 6 percent of his monthly salary for the remainder of such calendar year. Salaries below $4,800 pay only 3 percent, and those above are subject to the 6 percent deduction. The total amount of deductions is not computed in one percentage figure in the Act. We draw attention to this at this time because it is the basis of one of the plaintiff's arguments as to discrimination in the case. As a part of these deductions, section 13 of the Act, section 84-1313, R. S. Supp., 1963, requires all employees to pay a sum equal to 1 percent of his monthly salary for the funding of prior service benefits. It is provided that the employees' contribution for prior service benefits shall cease when the prior service obligation is properly funded, which is provided for in other sections of the Act not necessary to repeat here.

The Act provides that the State of Nebraska will contribute an amount equal to 104 percent of the amounts deducted from the salary of each employee of the Retirement System for the 3 and 6 percent deductions used to fund the future service benefits.

Under the Act, an employee's share of the fund arising from his salary deductions of 3 and 6 percent is defined as his "Employee Account." Furthermore, an employee member's share of the fund arising from the State's contributions is defined as his "Employer Account." There are special provisions as to the increase in the percentage of these amounts to 103 and 104 percent from the fund which are unnecessary to repeat here.

Under the Act, it is provided when an employee may elect to retire and the manner in which the annuity of a retiring employee is computed on his retirement date. It is provided that any member of the Retirement System who ceases to be an employee before becoming eligible for retirement may, upon application, receive termination benefit equal to the amount in his employee account. If he has been in the employment of the State for 5 years and he ceases his employment before retirement, he receives a graduated percentage of his "Employer Account." The remainder of the "Employer's Account," not collected by employees under the terms of the Act who have ceased their employment before being eligible for retirement, is paid into and applied to the reduction of the liability for prior service benefits provided for in the Act.

With this preliminary explanation, we now come to the section of the Act that is contended to be unconstitutional and destroying the validity of the whole Act. Section 12 of the Act, section 84-1312, R. S. Supp., 1963, as previously referred to, provides as follows: "As of January 1, 1964, a prior service annuity shall be computed for all employees who have been employees continuously since December 1, 1958, who were born prior to December 1, 1923, and who had not attained age sixty when continuous employment began. Such prior service annuity shall be equal to the number of years of creditable prior service multiplied by one half of one per cent of the employee's monthly salary as of March 1, 1963.

The number of years of creditable prior service shall

be one-twelfth of the number of completed months of continuous prior service except that the number of completed months shall not include any of the following:

(1) The first sixty months of continuous prior service;

(2) Service before the fortieth birthday; or

(3) Service after the sixty-fifth birthday."

Section 13 of the Act, section 84-1313, R. S. Supp., 1963, as previously mentioned provides for a deduction of 1 percent of the monthly salary from all employees to fund the annuities provided for above.

For the purposes of discussion, we will group plaintiff's assignment of errors. First, he says the provision for the deduction of 1 per cent to fund prior service benefits is a gratuity in violation of Article III, section 19, of the Constitution of Nebraska, and that it is a tax in violation of the uniformity requirements of Article VIII, section 1, of the Constitution. Second, he contends that the provision as to prior service benefits, future service benefits, and the elimination of certain other classes of employees already covered by retirement acts, constitutes an unreasonable classification and is in violation of the constitutional prohibitions against local or special laws contained in Article III, section 18, of the Constitution of Nebraska.

We examine plaintiff's first contention that the 1 percent deduction is a gratuity granted for prior services already rendered and that it is a tax. This question has previously been before the court. It arises from the fact that a certain number of employees entitled to prior service benefits could retire on the effective date of the Act and receive prior service benefits. This Act does not require that there be any particular length of qualifying subsequent service. It does require that they are employees and members on *the effective date of the Act*. This is all that is necessary. Wilson v. Marsh, 162 Neb. 237, 75 N. W. 2d 723; Ledwith v. Bankers Life Ins. Co., 156 Neb. 107, 54 N. W. 2d 409; State ex rel.

Sena v. Trujillo, 46 N. M. 361, 129 P. 2d 329, 142 A. L. R. 932.

We characterize the nature of employee's payments under a retirement plan providing for prior service benefits. The deductions are not property taken away from the employee since the money never becomes his property. They remain public funds. Wilson v. Marsh, *supra*. The withholding amounts to the fixing of his net present compensation. In Wilson v. Marsh, *supra,* this court said: "The benefit of the retirement system awarded to a member thereof *who renders services under the act creating the system* after its enactment is not a grant of extra compensation after the services are rendered which the Constitution condemns because the increase in pay is granted immediately and from the date of the grant is being currently earned. It is obviously not compensation granted after service had been rendered. *It is the payment thereof alone which is deferred to a later date.* If the services are rendered and terminated before the grant is made the benefits awarded are not compensation but are a gratuity." (Emphasis supplied.) See, also, Lickert v. City of Omaha, 144 Neb. 75, 12 N. W. 2d 644; Sullivan v. City of Omaha, 146 Neb. 297, 19 N. W. 2d 510, 21 N. W. 2d 510. The benefits granted, no matter how short the duration of service, must be construed as compensation currently earned. This Act fully recognizes the constitutional limitation imposed by requiring in the Act that the prior service benefits are only applicable to persons *in employment on the effective date* of the Act. This is in accord with the general rule, and we can find no authority to the contrary. See, Aldrich v. State Employees Retirement System, 49 Wash. 2d 831, 307 P. 2d 270; Haldeman v. Hillegass, 335 Pa. 375, 6 A. 2d 801. The plaintiff concedes that prior service benefits may be paid out of a retirement fund, but as we understand his argument. he seems to contend that there must be some substantial or fixed period of time during which the prior service

benefit beneficiary pays into the fund from current earn-ings. We do not agree. The Legislature must fix a dividing line some place in setting up the necessary classifications under the Act. Benefits proportionate to contributions are not required. This being true, the Legislature may fix the dividing line at any point as long as the recipients are employees and members of the class on the effective date of the Act. ...

The plaintiff argues that the 1 percent prior service benefit payment is a gratuity to a "closed class." The same situation was present in Wilson v. Marsh, *supra*, the Judges Retirement Act, where a class of seven judges could retire and collect prior service benefits on January 3, 1957, the effective date of the Act. No particular length of qualifying subsequent service was required. The act was declared valid and not the grant of a gratuity. Wilson v. Marsh, *supra*.

Plaintiff argues that the 1 percent deduction is a tax, and therefore in violation of Article VIII, section 1, of the Constitution, requiring the levy of taxes to be uniform and proportionate. What we have already said as to the nature of the deductions from salary disposes of this argument. The deductions from salary, including the 1 percent for prior service benefits, are amounts withheld that never become the property of the employee. The benefits conferred are deferred compensation payable to the employee under the terms and conditions of the Act which he voluntarily agrees to by accepting the terms of employment. It is not an exaction or tax for the purpose of carrying on the general functions of government. These amounts are applied and funded in different portions, under the terms of the Act, for the payment of all classes of retirement benefits. This argument that a retirement deduction is a tax has been presented and rejected in one form or another in our retirement or pension act cases. See, Wilson v. Marsh, *supra;* Lickert v. City of Omaha, *supra;* Sullivan v. City of Omaha, *supra*. In the Sullivan case, on rehearing,

we said: "In the Lickert case we held that the deduction of one dollar a month from the base pay of all policemen for the creation of a pension fund under a similar statute constituted a determination of the net amount of compensation to be paid monthly. *The right to a pension was held to be a part of the compensation paid and did not constitute a gratuity. Consequently, it is not a tax or exaction within the meaning of the constitutional prohibition.*" (Emphasis supplied.)

We, therefore, hold that sections 12 and 13 of the Act providing for the 1 percent deduction is not a tax within the meaning of Article VIII, section 1, of the Constitution. It not being a tax, since the benefits conferred are currently earned deferred compensation in return for the deduction required as a condition of the contract of employment with the State, it is not necessary to examine, at this time, plaintiff's argument as to uniformity and equality. It is not a tax, and it is not necessary that it be uniform and proportionate under this section of the Constitution.

Plaintiff lastly argues that the Act is invalid class legislation and that the classifications made are unreasonable and in violation of Article III, section 18, of the Constitution of Nebraska. Some preliminary observations are in order. We are not dealing here with a tax or with a regulation or invasion of the freedom of a citizen under the police, health, or welfare clauses of the Constitution. We are dealing here with the right of a state as an employer to set up a retirement plan and to provide for reasonable conditions with reference to membership and the funding of prior service and future service benefits. After a review of the cases, it can be definitely stated that the courts have repeatedly held a broad legislative discretion over the setting up of retirement plans and over the destiny of the public employee. The State, in this case, is in the position of an employer. It is in the position of setting up the terms and conditions under which the State will contract for

employment and under which an employee may or may not, according to his wishes, accept the proffered conditions.  All that is required is that the classifications and the requirements thereunder must have some reasonable relation to the purposes and objectives of the Act.  The purposes and objectives of the Act in this situation are to set up conditions and requirements of employment which the employee is free to accept or reject.  In evaluating this situation, we take notice of the fact that the State is an employer on the labor market and must meet, and is subjected to, the competitive influences and pressures that are present under modern economic conditions.  In the light of this situation, it is reasonable for it to hold out and to set up inducements to employees in a retirement act.  The purposes and objectives of a retirement act are manifold.  The Legislature may from time to time have to change the conditions to meet new needs and purposes appearing in the economic scene.  The necessity to furnish what is commonly known as "fringe benefits" in this area in order to secure and keep good employees is manifest under modern conditions.  We must evaluate the Act in the light of the employment policy purposes sought to be accomplished.  It seems clear to us that the State may make, as a condition of its employment, any sort of a reasonable provision that relates to the manifold objectives and purposes of such an Act.  The maintenance of morale, inducement to younger employees to remain, inducement for the older ones to quit when their skills have diminished, special inducements for different high-quality types of employment, and a regard for the necessity to meet competitive provisions in other retirement acts, are all proper objectives.  The Legislature has a right to define and determine what conditions or objectives are reasonable in this area.  It is clear that State employment is not a vested right, but it is extended at the will of the State, and the State may reasonably make a mandatory retirement

system as a condition of such employment, and if this be so, it follows that the State has a right to impose such conditions as are economically and practically sound. And, in responding to such imposed conditions, the employees have the alternative of accepting such conditions and complying with the conditions that are found in the Act or finding work elsewhere.

With this general background in mind, we approach the specific classification arguments by plaintiff. First, he again attacks the 1 percent deduction on all employees to fund the payments for prior service benefits. He argues, in practical effect, that you are taking the 1 percent away from us and giving it to a class (prior service) that we don't share in and a class that present employees can't enter, and that it is therefore unequal, not uniform in its application, and is an unreasonable classification. This argument echoes his attack as to the deduction being a gratuity and a tax. The principles to be applied to testing legislative classification have been well established. The difficulty arises in their application to a particular set of facts or a particular legislative act. Classification is proper if the special class has some reasonable distinction from other subjects of a like general character, which distinction bears some reasonable relation to the legitimate objectives and purposes of the legislation. The Legislature may, and many times must, carve out classes or distinctions that would appear arbitrary or unreasonable. But, on closer examination, it is found that the classifications are related to and are necessary for the accomplishment of the legitimate purposes of the legislation. The question is always whether the things or persons classified by the Act form by themselves a proper and legitimate class with reference to the purposes of the Act. See 2 Sutherland, Statutory Construction (3d Ed.), § 2104, p. 14. See, also, Wilson v. Marsh, *supra;* Hessian v. Ervin, 204 Minn. 287, 283 N. W. 404; Lickert v. City of Omaha, *supra;* Sullivan v. City of Omaha, *supra.*

It is obvious that any retirement act is "special" legislation in the sense that it is designed for a particular group of people and for a special purpose. Its purposes cannot be accomplished by a general law applying to all people. Prior service benefits are a legitimate objective of retirement legislation. The deductions need not be proportionate to salary, and they may be deducted in different amounts from different classes of employees. Lickert v. City of Omaha, *supra;* Sullivan v. City of Omaha, *supra.* In the Sullivan case, *supra,* the deduction of the fixed amount from all members of the system had the result of taking a proportionately larger amount from low-salaried employees than from high-salaried employees and returning to low-salaried employees a smaller retirement benefit. Without passing upon the wisdom of such a policy by the Legislature, the court held in that case that this system did not want for due process, equal protection, or lack of uniformity. The court further said in that case: "The fact that their contribution to the pension fund set up for their benefit is placed on a fixed basis rather than on a percentage of earnings is not of itself violative of either State or federal constitutional prohibitions."

We note that the 1 percent retention of salary is uniform. We also note again that this 1 percent never becomes, under the retirement act scheme, the employees' property. It continues to be public money and the fund is a public one. Wilson v. Marsh, *supra.* It is retained uniformly as to every employee. It is a condition of his employment. But, plaintiff argues that it is earmarked for the payment to a closed class of which he is not a member (prior service benefits). This argument ignores the whole scheme and purpose of the Act. The plaintiff and all other employees have a total amount retained to pay all benefits, which includes the 3 and 6 percent retentions for future service benefits. Each has a separate fund, matched by the State, with certain rights and obligations attached thereto as a condition of

his contract of employment. The 1 percent requirement may not be divorced from the total conditions and requirements of the Act. Plaintiff would lead us into following the form and forgetting the substance. The Act, comprehensively viewed, requires a total payment by the employees. It provides a comprehensive scheme for the payment of benefits on retirement, both for prior and future service or combinations thereof. Construing the whole Act, all that sections 12 and 13, with reference to the 1 percent deduction, do is to designate that portion of the whole retention that the administrators shall use to fund the prior service benefits. We fail to see any difference, in substance, between this situation and the Judges Retirement Act under consideration in Wilson v. Marsh, *supra*. There a general 4 percent salary deduction was made on all "future service" judges beginning January 3, 1957, but a fixed benefit was provided for prior service computed according to months and years of service. It accomplished, of course, as in most retirement systems, benefits that are disproportionate among the members when compared to their actual contributions. Could it be said that if the Legislature had been more detailed in the Judges Retirement Act and had spelled out some particular percentage to fund or pay the prior service benefits, that such a requirement would have rendered the classification unconstitutional? We think not. Plaintiff's argument, if carried to its logical conclusion, would result in the declaration of the invalidity of any retirement act unless the benefits as to all members were exactly proportionate to the contributions. Such a position does not recognize the reasonable purposes and objectives of a retirement act. It does not recognize that the State here is acting in its capacity to set the required conditions of employment. Plaintiff's contention would render the accomplishment of the legitimate purposes of a retirement act impossible and completely impractical. The recognition and payment of prior service benefits under all retire-

ment acts goes to the core of the economic and employment policy purposes of a retirement act, the inducement to remain in employment, the retention of trained personnel, and an inducement for the older employees to make way for younger employees. What the Legislature has done here is clearly within its constitutional power and discretion as to conditions of employment of State employees and is well within the wide permissible range of discretion permitted by the reported cases. Wide discretion is vested in the Legislature as to the conditions of public employment and as to the requirements, classifications, contributions to, and benefits conferred by a retirement act. See, Annotations, 163 A. L. R. 870, 7 A. L. R. 2d 694; Scott v. Greer, 229 Ark. 1043, 320 S. W. 2d 262; Hansen v. Public Employees Retirement System Board, 122 Utah 44, 246 P. 2d 591; State ex rel. Watson v. Lee, 157 Fla. 62, 24 So. 2d 798; Lickert v. City of Omaha, *supra;* Burns v. City of St. Paul, 210 Minn. 217, 297 N. W. 638; Sullivan v. City of Omaha, *supra;* State ex rel. Haberlan v. Love, 89 Neb. 149, 131 N. W. 196, 34 L. R. A. N. S. 607, Ann. Cas. 1912C 542; Bilyou v. State Employees Retirement System, 25 Cal. Reptr. 562, 375 P. 2d 442.

Plaintiff's contentions as to the 1 percent deduction, as well as his construction and interpretation of the nature of the fund and the deductions, we think are well met by the Minnesota Supreme Court in Hessian v. Ervin, *supra,* where an employee, much as here, sought a declaration of the unconstitutionality of the State Employee Retirement Act. The court said: "Plaintiff so far has no right of an irrevocable or rerepealable nature in or to the fund, or any part of it. * * * Nor will rights accrue for him until performance of the conditions precedent to payments from the fund, i.e., retirement after contributing for the statutory period. * * * *Plaintiff, having no right of person or property which is adversely affected by the law, is in no position to complain of its operation. He certainly has no such right in his status*

*of state officer or employee.* That is because 'public offices in this state are mere agencies of the government, created for the benefit of the public, not for the benefit of the incumbent.' In the absence of constitutional restriction, and there is none for this case, 'their emoluments, when they are * * * prescribed by law, may be altered, increased, reduced, and regulated by law.' Not only that, but, the office itself may be discontinued or abolished. * * * It matters not whether an employe's contributions to the retirement fund are paid ·for his account from the state to the fund, or are to be thought of as going first to the employe and then from him to the fund. The fact is that as to those in plaintiff's class they never reach the employe at all, but are paid directly into the retirement fund. * * * *The most favorable view for plaintiff, and it does not help him any, is that his employment is by law conditioned on the making of these payments. Subject to that condition he accepted and enjoys his office. In that capacity therefore, he is in no position to complain on any legal ground of what the state does with the fund.*" (Emphasis supplied.)

Plaintiff complains of the classification requiring· employees making more than $4,800 to pay an extra per-. centage of their salary into the fund, and that the State in matching the contribution will have to make an extra contribution out of tax funds. Much of what has been said previously applies in principle here. We can find nothing unreasonable in this. Contributions of unequal percentages of salary according to classes of firemen were held valid in Sullivan v. City of Omaha, *supra.* If the retention is reasonable, it follows that the State's matching contribution is valid for the same reason. It all constitutes public money to be expended by law as deferred compensation under the terms and conditions of the Act. The Legislature has a right to make employee policy judgments in this field. The employee making more than $4,800 per year can better afford a

larger deduction. And, on the other hand, the Legislature can reasonably determine that there must be extra inducements to higher qualification positions and extra retirement inducements above the $4,800 per year salary level. This classification is reasonable when examined with reference to the legitimate objects and purposes of the Act in setting up a practical and fair employment and retirement policy.

Plaintiff argues that the exceptions from the Act as to elected officials with definite terms is unreasonable. The Act provides that they will come under its provisions as soon as their term expires, and it takes effect as to them as soon as it may become operative under the Constitution. Under the authority of Wilson v. Marsh, *supra,* the Act could not apply as to those employees having terms since their salary would be diminished during their term of office. The Legislature simply recognized this distinction, and it is obviously a reasonable one. The provision in the Act that it applies as soon as it could become operative under the Constitution accomplished the same result reached by this court in Wilson v. Marsh, *supra,* fixing the date of operation of the Judges Retirement Act as January 3, 1957, when the terms of the judges expired. An Act is not subject to criticism because separate provisions take effect at different dates in the future, if as an entirety, it becomes of effect and operative on a certain date. State ex rel. Wheeler v. Stuht, 52 Neb. 209, 71 N. W. 941. There is no merit to this contention.

Plaintiff attacks the exclusion of the excepted groups already under retirement systems, such as the judges, State Safety Patrol, etc. The validity of those classifications is not before us in this case. This Act is general in scope and applies to all employees not already covered. The question before us is whether the persons and things actually embraced by the Act form by themselves a proper and legitimate class as to the purposes of the Act. It is to be presumed that the other retirement acts

and the classifications embraced therein are reasonable and constitutional and that, therefore, the Legislature would be justified in excluding them in the present Act. The plaintiff's argument would lead us to the absurd conclusion that there would have to be duplicate retirement systems, repeal all present ones, or that it would be impossible to have retirement systems for the remaining employees not covered. In any event, similar classifications as to the groups excepted in this Act have been held valid. See State ex rel. Taylor v. Hall, 129 Neb. 669, 262 N. W. 835 (Supreme Court Judges, district court judges, members of the Railway Commission, and members of the Board of Control). See, also, State ex rel. Watson v. Lee, *supra*; Bilyou v. State Employees Retirement System, *supra*.

Lastly, plaintiff attacks various provisions in the Act setting up conditions as to age, length of qualifying service, and a requirement for full-time employment. To adopt plaintiff's contentions in these respects would be for the court to substitute its judgment as to State employment policy for that the of Legislature. The State and the Legislature are here acting as an employer where broad economic and competitive conditions may exist. It must have broad discretion as to conditions of employment and as to conditions, classifications, and membership in retirement plans. Lines must be drawn as to age, length of service, and other conditions. The apparent inequity of discriminating between one just below or above the line does not destroy the validity of the classifications attacked or prevent its enforcement. We have examined these contentions and in light of the applicable rules, there is no merit to them.

In conclusion, we hold that the prior service benefits provided by the Act are not a gratuity in violation of Article III, section 19, of the Constitution. We hold that all or any of the amounts withheld by the State from an employee's salary are not a tax or an exaction subject to the uniformity provisions of Article VIII, section

1, of the Constitution of Nebraska. We hold that the Act is not invalid as class legislation in violation of Article III, section 18, of the Constitution. We hold that the various classifications made therein are in all respects reasonable and properly relate to the legitimate purposes and objectives of the Act to set up a comprehensive employee retirement system in furtherance of the power and duty of the Legislature to control and govern the conditions and standards of public employment.

The judgment of the district court holding L. B. 512, Laws 1963, chapter 532, page 1666, valid and constitutional is affirmed.

AFFIRMED.